Filed 7/5/23  Hodge v. Arzoo CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHALA REKAY HODGE, | B318100 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV40597) |
| v. | |
| PAILICK T. ARZOO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

Chala Rekay Hodge, in pro. per., for Plaintiff and Appellant.

Anderson, McPharlin & Conners, Elmira R. Howard, and Ali Z. Vaqar for Defendant and Respondent.

A court ordered the sale of plaintiff and appellant Chala Rekay Hodge's (Hodge's) home to defendant and respondent Pailick T. Arzoo (Arzoo) and approved a temporary tenancy for Hodge after consummation of the sale. After that tenancy period expired and Arzoo commenced unlawful detainer proceedings to gain possession of the premises, Hodge sued Arzoo for racial discrimination and inflicting emotional distress. The gist of the allegations was Arzoo wrongly pursued unlawful detainer proceedings and submitted a false police report claiming she was assaulted by Hodge. The trial court sustained Arzoo's demurrer to the operative complaint without leave to amend, finding the alleged misconduct was privileged activity. Hodge appeals and we consider whether the court correctly concluded Hodge's claims are barred by the litigation privilege.

## I. BACKGROUND[1]

Hodge is the mother of Chala Renay Hodge (Chala). In 2004, a special needs trust was established for the benefit of Chala by her grandmother. The trust's principal asset was a single family residence with four detached apartment units located in Inglewood, California. Chala and Hodge lived (rent-free) in two of the complex's units and the two remaining units were rented to non-family members.

Thirteen years after the trust's establishment, the trustees petitioned the probate court to sell the property due to a lack of

---

[1]    Our factual recitation is taken from the operative complaint's allegations and court records judicially noticed by the trial court. (See generally *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 & fn. 1 (*Yvanova*).)

2

sufficient funds to maintain and manage it. Notwithstanding Hodge's objection, the court authorized the sale.

In December 2018, the court approved the sale of the property to Arzoo and her son Andre Arzoo (Andre) for $1.15 million under the following terms: following the sale, Hodge and Chala would be allowed to continue to reside at the property for 59 days rent-free and for up to six months thereafter at a cost of $2,000 per month. Later that same month, a grant deed memorializing the transfer of the property to Arzoo and Andre was recorded.

Nearly a year later, Hodge was served with an eviction notice.[2] The day after she was served, Hodge (representing herself) filed suit against Arzoo and Andre seeking an injunction that would preclude them from interfering with her "free enjoyment" of the property as a "lifetime resident." In addition, Hodge sought monetary compensation for Andre's "civil harassment" which allegedly took the form of "racial words and physical threats."

Arzoo demurred to Hodge's complaint and argued it was uncertain because there were no allegations of misconduct made against her.[3] The trial court sustained the demurrer because the

---

[2]     Shortly thereafter, in December 2019, Andre initiated an eviction proceeding against Hodge for unlawful occupation of the property and failure to pay rent. Andre also alleged plaintiff had made "numerous" threats and committed acts of violence against him and his representatives.

[3]     Andre also demurred to Hodge's original complaint. After Hodge failed to timely file an amended pleading against Andre, the trial court dismissed the claims against him with prejudice

complaint's allegations left the court "to guess at what claims are being asserted [against Arzoo] and what the facts in support of them are." The court granted Hodge leave to amend.

In her first amended complaint, Hodge replaced her claims for injunctive relief with causes of action seeking damages for racial discrimination and infliction of emotional distress. In support of these causes of action, Hodge alleged Arzoo filed a false police report against her and made false statements in the unlawful detainer action against her. Attached as an exhibit to the amended complaint was a copy of a report, dated November 16, 2019, filed by Arzoo and Andre with the Inglewood Police Department. The report relates, among other things, that Arzoo told the police Hodge became extremely upset when Andre served her with the notice to vacate the property and said "something bad is going to happen to you and your family."[4]

Arzoo demurred to the first amended complaint on the principal ground that her alleged misconduct was protected by the litigation privilege. The trial court sustained the demurrer with leave to amend.

Hodge then filed a second amended complaint, which is the operative pleading. Nominally, the operative complaint asserts four causes of action: (1) violation of Civil Code sections 1940.2

---

and entered judgment in his favor. No timely appeal was noticed from that ruling.

[4] The police report also contains a similar statement by Andre, who said that when he tried to serve plaintiff with the notice to vacate she became "extremely irate" and stated "'something bad' was going to happen to him."

4

and 1954,[5] (2) violation of Civil Code sections 51 and 1927,[6] (3) infliction of emotional distress, and (4) violation of Penal Code section 148.5.[7]

Focusing on the operative complaint's substantive allegations, the first cause of action alleges Arzoo filed "retaliatory court declarations" and other "court moving papers" that falsely alleged Hodge "committed the act of assault and battery." In support of the second cause of action, Hodge alleged Arzoo "contrive[d] a false [police] report." In support of her emotional distress claim, Hodge alleged she suffered emotional distress as a result of Arzoo's "quest" to evict her from the property, which included the filing of a "knowingly fabricated [police] report." In connection with the fourth cause of action, Hodge maintained Arzoo used the false police report in a number of court proceedings, including the unlawful detainer action.

Hodge also generally alleged that Arzoo attempted to serve her with court papers containing the purportedly false police report. Hodge averred that Arzoo's misconduct was an attempt to

[5]     Section 1940.2 of the Civil Code prohibits landlords from taking certain actions for the purpose of influencing a tenant to vacate a dwelling. Section 1954 regulates how and when a landlord may enter leased premises.

[6]     Civil Code section 51, the Unruh Civil Rights Act, prohibits, among other things, racial discrimination in housing. Section 1927 of the Civil Code protects a tenant's right to quiet enjoyment of leased premises.

[7]     Subdivisions (a) and (b) of section 148.5 of the Penal Code prohibit anyone from knowingly making a false report to the police.

5

"cover[ ] up" for Andre's alleged misconduct, including use of racial epithets directed toward her.  Hodge prayed for general damages in the amount of $5 million, emotional distress damages in the amount of $500,000, damages for claimed moving expenses and rent in the amount of $15,876, and punitive damages in an unspecified amount.

Arzoo demurred to the second amended complaint on the same principal ground as her earlier demurrer: all of the causes of action were barred by the litigation privilege.  In addition, Arzoo argued Hodge failed to state sufficient facts to support each separate cause of action or, in the alternative, that each cause of action was uncertain, unintelligible, and ambiguous.  In support of the demurrer, Arzoo requested judicial notice of court records from the probate proceeding and the trial court's earlier dismissal of Hodge's claims against Andre.

The trial court held a hearing on Arzoo's demurrer in January 2022.[8]  Although Hodge did not timely file a written opposition to the demurrer, the trial court allowed her to argue the merits of the matter.

The trial court sustained the demurrer.  It found that even if Arzoo's statements in the police report and unlawful detainer proceeding were assumed to be false, those statements were still protected by the litigation privilege.  The court also declined to grant Hodge leave to amend because she did not identify any new facts that could serve as the basis for a further amended pleading.

---

[8]     At Hodge's election, a transcript of the hearing on defendant's demurrer was not included in the record.

6

## II.  DISCUSSION

Hodge's complaint is indeed barred by the litigation privilege and the demurrer was correctly sustained.  Although Hodge's claims are at times difficult to decipher, they are by all appearances founded on communicative conduct by Arzoo taken in connection with a judicial proceeding or with public authorities whose responsibility is to investigate and remedy wrongdoing—i.e., the allegedly false police report, the service and filing of the unlawful detainer action, and allegedly false statements made in support thereof.  As we now briefly explain, such conduct is what the litigation privilege protects.

The litigation privilege, codified at Civil Code section 47, subdivision (b), "'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Ibid.;* accord, *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362 (*Hagberg*) ["'The privilege extends beyond statements made *in* the proceedings, and includes statements made to *initiate* official action'"].)  The privilege has been held to extend specifically to statements made in a police report.[9]  (*Hagberg,*

---

[9]      In 2021, an amendment to Civil Code section 47 that adds a new subdivision took effect.  As amended, the statute now provides the litigation privilege "does not make privileged any communication between a person and a law enforcement agency

*supra*, at 359-360 [Civil Code section 47, subdivision (b) provides a privilege for statements made by a citizen who contacts the police to report suspected criminal activity]; see also, e.g., *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 971-972 [claim for intentional infliction of emotional distress based on allegedly false police reports was barred by the litigation privilege].)  In addition, the initiation and prosecution of unlawful detainer actions have been held to be protected by the litigation privilege. (See, e.g., *Action Apartment*, *supra*, 41 Cal.4th at 1249; *Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1551-1553 [wrongful eviction claim barred by litigation privilege to extent it was based on landlord's service of three-day notice to quit and the subsequent filing of unlawful detainer action].)

As should be apparent at this point, the lawsuit filed by Hodge falls within the scope of the litigation privilege.  The factual foundation for all of Hodge's causes of action are allegations that Arzoo made a false police report and then made false statements in a declaration supporting the unlawful detainer action.  All of Arzoo's alleged misconduct, in other words, was either made in a legal proceeding or in connection with one—including steps preliminary thereto.  (See, e.g,

---

in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." (Civ. Code, § 47, subd. (b)(5).) Even assuming the current version of the statute would apply for purposes of this appeal, there is no allegation that Arzoo knew the report she made was false at the time she made it or recklessly disregarded the truth or falsity of the report.

*Hagberg, supra,* 32 Cal.4th at 362 ["By analogy to cases extending the litigation privilege to statements made outside the courtroom, many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing"].) In addition, all of Arzoo's alleged wrongs are asserted to have been undertaken to further the objectives of ongoing or potential judicial proceedings, i.e., to hold Hodge to account for either her own allegedly injurious conduct or her failure to abide by the terms of the probate court's order approving the sale of the property to Arzoo and her son.[10]

The trial court also did not abuse its discretion in denying further leave to amend the operative complaint because Hodge did not—and still has not—identified any factual allegations she could make in good faith that would put her claims against Arzoo outside the protection of the litigation privilege. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 ["A trial court does not abuse its discretion when it sustains a demurrer

---

[10] There is no claim or allegation that the filing of the police report was itself undertaken because of racial prejudice. Insofar as the operative complaint can be read to maintain an Unruh Act claim, there are no facts that might plausibly state a proper Unruh Act cause of action and a demurrer to that claim was properly sustained for that reason alone. Similarly, even if we were to look only to the labels of Hodge's other causes of action rather than the factual allegations offered to support those labels (but see *Malott v. Summerland Sanitary Dist.* (2020) 55 Cal.App.5th 1102, 1110 ["A pleading should be judged by the substance of its allegations rather than its label"]), the complaint manifestly fails to state facts that could support the asserted legal wrongs.

9

without leave to amend if either (a) the facts and the nature of the claims are clear and no liability exists, or (b) it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a claim"].)

## DISPOSITION

The judgment is affirmed.  Arzoo shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.